# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                           **Case No. 20-CR-92**

**OSCAR REYES-SOUZA**
       **Defendant.**

## DECISION AND ORDER

Defendant Oscar Reyes-Souza moves the court to reconsider its previous order of detention pending trial. For the reasons that follow, I deny his motion and continue the detention order.

**I.**

On May 22, 2020, the government obtained an arrest warrant and a criminal complaint charging defendant with conspiracy to possess with intent to distribute heroin, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. The complaint alleged that defendant acted as a courier for a large scale drug trafficking organization. Specifically, the complaint indicated that in January 2020 defendant, along with his wife, traveled to a warehouse in Indiana and entered the business. Agents later observed a tow truck arrive, enter the garage, and then exit with a white cargo van. Agents stopped the truck and on searching the van located 19 packages of suspected heroin in a hidden compartment. Agents interviewed defendant,[1] and he indicated that he had been paid to travel from Illinois to Indiana to meet the tow truck driver and have the

---

[1] The complaint mistakenly indicated that defendant was a passenger in the tow truck, when he instead left in another vehicle, which was also pulled over by police.

van towed back to Chicago. He stated that his wife had nothing to do with it, and he insulates her from this lifestyle. He further indicated that he was on parole for a marijuana conviction in Illinois. Agents determined that defendant was a Mexican national, with an expired employment authorization card.

Defendant was initially charged with a drug offense in Indiana state court. He was granted bond in the Indiana matter but never actually released, as ICE officials took him into custody and commenced removal proceedings. The complaint indicates that on May 20, 2020, case agents learned of his impending removal from the United States. They obtained a federal complaint two days later.

Defendant appeared in front of a magistrate judge in this district on May 26, 2020, and the government sought detention, indicating that the offense was very serious, involving approximately 19 kilograms of heroin; that defendant was in the United States illegally and in removal proceedings; and that given the significant penalties he faced and his status as a Mexican national he presented a flight risk. The government further noted that although he was alleged to be a courier for the organization, he was tasked with doing things that required a great deal of trust. In arguing for release, defendant indicated that he had lived in the United States since he was four years old and had been granted status under the DACA program, allowing him to go to school and work. He noted consistent employment and family ties in the Chicago area. Finally, he noted a limited prior record, an Illinois marijuana case and a first offense OWI in Wisconsin.

The magistrate judge allowed release on conditions. I granted the government's motion to stay the release order and held a hearing on May 27, 2020. Prior the hearing, pre-trial

services filed a bond study recommending detention as a flight risk.[2] At the hearing, defendant again discussed his history in the United States, including the grant of DACA consideration, his employment, and his family ties. Defendant noted that his prior record was limited, and his immigration counsel was working on obtaining expungement of the marijuana conviction. Defendant further noted the practice in this district of ICE respecting the court's release orders and lifting its hold until the case is concluded.

In response, the government noted that defendant had been denied renewal under DACA prior to the January 2020 arrest, and that on May 11, 2020, he agreed to voluntarily removal from the United States. The government further noted that defendant had been charged with several probation violations in his Illinois marijuana case, which had nothing to do with the instant offense, demonstrating poor adjustment to supervision.

On consideration of the arguments, I ordered detention based on the presumption applicable to the charged crime, 18 U.S.C. § 3142(e)(3)(A), the nature of the offense, the strength of the evidence, and defendant's history, including a prior drug conviction and his agreed removal from the country. However, I noted that some of the issues in the case were not totally clear and indicated that the defense could move to re-open the detention hearing if it obtained more information.

Defendant filed the instant motion on June 11, 2020, the government responded, defendant replied, and the government filed a sur-reply. The matter is ready for decision.[3]

---

[2]Pre-trial services had provided defendant's criminal history but did not have time to complete a bond study prior to the hearing before the magistrate judge.

[3]On June 16, 2020, the government obtained an indictment charging defendant with conspiracy to distribute one kilogram or more of heroin. If convicted, he faces a minimum of 10 years up to life in prison.

3

**II.**

A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained, or detained. 18 U.S.C. § 3142(a). The court will order detention if it finds that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). In making this determination, the court considers the nature and circumstances of the offense charged, including whether the offense involves a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Certain offenses, including drug trafficking crimes with a maximum penalty of ten years or more, carry a rebuttable presumption that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. 3142(e). This presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. United States v. Portes, 786 F.2d 758, 764 (7th Cir. 1985). Even if it is rebutted, the presumption remains in the case as an evidentiary finding militating against release, although the ultimate burden of persuasion rests with the government. United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986). The government must prove danger by clear and convincing evidence, Portes, 786 F.2d at 764, and flight risk by a preponderance of the evidence, id. at 765.

Finally, a defendant, previously detained, can seek to re-open the detention hearing if he presents new information which has a material bearing on the issue whether there are conditions of release that will reasonably assure his appearance and the safety of the

4

community. 18 U.S.C. § 3142(f).

**III.**

In the instant motion, defendant further discusses his social background, indicating that he was brought to the United States by his parents at the age of four, and he has not been back to Mexico since that time. (R. 19 at 1-2.) He indicates that he applied for and was granted consideration under the DACA program, permitting him to work. (R. 19 at 2.) He has been married since June 2017 and had a child in September 2019. After his arrest, defendant's wife and child moved in with his in-laws, and he indicates that he can also live with them if released. (R. 19 at 3.)

Defendant further notes that his record contains no history of violence or weapons offenses and is limited to a marijuana conviction and an OWI citation. (R. 19 at 3-4.) In the marijuana case, he was originally charged with possession of 2000-5000 grams but pleaded guilty to possessing 30-100 grams, receiving a sentence of two years probation. (R. 19 at 4.) He acknowledges that the state probation department twice initiated violation proceedings, based on his receipt of traffic citations, but he indicates that the petitions were withdrawn when the citations were dismissed. (R. 19 at 4-5.) He states that he otherwise complied with probation from 2018 until his arrest in this matter, and that he had also complied with pre-trial release conditions from 2016 to 2018 while the Illinois matter was originally pending. (R. 19 at 5.)

Regarding his current DACA status, defendant acknowledges that his renewal was denied when he failed to respond to a December 2017 request for information from USCIS inquiring about his (then pending) marijuana case and an alleged obstruction offense. (R. 19 at 5.) He indicates that after his state marijuana case concluded he hired immigration counsel

5

to see if the conviction could be expunged and if he could then obtain immigration relief. However, these plans came to a halt when he was arrested for the instant offense. (R. 19 at 6.)

Regarding the instant offense, defendant notes that police had the Indiana warehouse under surveillance for several months prior to his January 2020 arrest. (R. 19 at 7.) He notes that his role in this incident was simply to let the tow truck driver into the building to take the cargo van, and that he left separately in another vehicle. (R. 19 at 8.) Police stopped both his vehicle and the tow truck, finding 19 packages of heroin in the latter; contrary to earlier suggestions, he was not a passenger in the tow truck, and no drugs were found in his vehicle. (R. 19 at 9.) He also contests the government's suggestion that he occupied a position of trust, noting the limited allegations of his previous involvement in the conspiracy. (R. 19 at 10.)

Regarding his other pending matters, defendant notes that the Indiana charges have been dismissed. (R. 19 at 11-12.) He further notes that, although Illinois authorities have filed a violation notice based on the instant offense, he has been in federal custody since May 26, 2020, and Illinois has not taken any action to secure his appearance for revocation proceedings. (R. 19 at 12.) Finally, he notes that an ICE hold may be lifted if he is granted release in this case, and that he is not barred from release because he is a deportable alien. (R. 19 at 12-13.) He notes that ICE has already signaled that it is giving the federal prosecution priority over removal, otherwise he would be in Mexico right now. (R. 19 at 13-14.) He acknowledges that he agreed to voluntary departure in the pending removal proceedings but indicates that this was "with safeguards," i.e., he would remain in custody and be removed from the country by law enforcement, but avoid a formal removal order. (R. 19 at 14.)

Most of these arguments are not "new" under § 3142(f). While he provides a bit more

6

detail now, I considered the nature of his involvement in the January 2020 incident, his history in the United States, his family ties, and the nature of his prior record at the previous hearing. Defendant does provide more detail about the Indiana and Illinois matters, but that information does not change my determination. Dismissal of the Indiana state case was to be expected given the federal indictment. Defendant explains the previous probation violations alleged by Illinois authorities, but that does not change the fact that he allegedly committed the instant offense while on supervision. Defendant contends that Illinois has not demonstrated an interest in pursuing revocation, but the government contests that characterization, noting that Illinois filed a violation petition, scheduled hearings, appointed counsel, and issued a writ to secure his appearance. (R. 33 at 6.) In any event, regardless of how Illinois ultimately handles this matter, defendant's status on probation and his alleged violations of its terms suggests that no conditions will reasonably assure his appearance and the safety of the community in this case.

Defendant also provides more detail regarding the DACA denial, his efforts to reinstate his status in the country, and the nature of the removal order entered in the pending immigration proceedings. The parties also debate whether, if released by this court, ICE will respect the order or instead remove him from the country. I agree with defendant that deportable aliens are not excluded from consideration for release in criminal proceedings, see United States v. Chavez-Rivas, 536 F. Supp. 2d 962, 964 (E.D. Wis. 2008), and that the Bail Reform Act is concerned with whether the defendant will flee or abscond of his own volition, not whether he will fail to appear because the actions of another government agency made it impossible. (R. 36 at 2.) I decline to speculate on what ICE would do if I allowed release. A defendant's immigration status is a relevant factor in the risk of flight analysis, id. at 964 n.3, and in this case defendant agreed to voluntary departure from the country. The government suggests that he

7

did that to avoid the severe penalties he faces in this case (R. 33 at 7), a suggestion defendant denies (R. 36 at 7-8), but this is nevertheless a factor consider in determining whether conditions can be fashioned to ensure that he does not flee.

Finally, defendant clarifies that he was not personally transporting the 19 kilograms of heroin. However, the evidence, including a statement by the tow truck driver (R. 33 at 4), suggests that he was facilitating the transportation of a large amount of a highly dangerous drug.

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's motion to reconsider bond (R. 19) is denied. The government's motion to file a sur-reply (R. 40 ) is granted.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2020.

s/ Lynn Adelman
LYNN ADELMAN
District Judge
